**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DYNALANTIC CORPORATION*,* | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 95-2301 (EGS) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF DEFENSE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff, the DynaLantic Corporation ("DynaLantic"), brings this suit against the United States Department of Defense ("DoD"), the United States Department of the Navy ("the Navy"), and the United States Small Business Administration ("SBA") in order to challenge DoD's utilization of the SBA's Section 8(a) Business Development Program in the awarding of contracts. Pending before the Court are the parties' cross-motions for summary judgment.  For the reasons stated herein, the Court finds that the record before the Court is insufficient to decide the pending motions because there is no information regarding Congress's 2006 reauthorization of the program in question. Therefore, both motions for summary judgment are **DENIED without prejudice**, and the parties are directed to propose future proceedings that will fully supplement the record.

1

**BACKGROUND**

## I. Statutory Overview

In order to explain the need for supplementing the record, a limited overview of the statutory framework and procedural history is necessary.  The Small Business Act sets a "Government-wide goal" that "not less than 5 percent of the total value of all prime [federal] contract and subcontract awards for each fiscal year" be awarded to socially and economically disadvantaged small business concerns.  15 U.S.C. § 644(g)(1). Notwithstanding the Government-wide goal, each agency, through negotiation with the SBA, is obligated to establish its own goal for contracting with disadvantaged small businesses.  *Id.* § 644(g).  These goals are not mandatory and the Act provides no sanction if an agency fails to meet its goal.

Under Section 8(a) of the Act, small businesses owned and controlled by disadvantaged individuals may apply to the SBA and, if admitted into the program, are eligible to receive technological, financial, and practical assistance, as well as support through preferential awards of government contracts.  *See id.* § 636(j)(10)-(16).  The program allows the SBA to enter into contracts with other government agencies and then subcontract with qualified program participants.  It should be noted, however, that admission into the 8(a) program does not guarantee

2

that a participant will receive 8(a) contracts.  13 C.F.R. §
124.501(c).

In order for a firm to participate in the Section 8(a)
program, the SBA must certify that the firm is a disadvantaged
small business under specific criteria.  *See* 15 U.S.C. §
636(j)(11)(E)-(F); 13 C.F.R. § 124.101.  A small business is
"disadvantaged" if at least 51 percent of the firm is
unconditionally owned and controlled by one or more individuals
who are both socially and economically disadvantaged.  *See* 15
U.S.C. § 637(a)(4)(A)-(B); 13 C.F.R. § 124.105.  "Socially
disadvantaged" individuals are persons who have been "subjected
to racial or ethnic prejudice or cultural bias within American
society because of their identities as members of groups without
regard to their individual qualities."  13 C.F.R. § 124.103(a);
*see* 15 U.S.C. § 637(a)(5).  Individuals who are members of
certain racial and ethnic groups are presumptively socially
disadvantaged.  13 C.F.R. § 124.103(b); *see* 15 U.S.C. §
631(f)(1).

The DoD program was established by Section 1207 of the
National Defense Authorization Act for Fiscal Year 1987, and was
later codified at 10 U.S.C. § 2323.  The DoD program was
initially enacted as a three-year pilot program.  *Rothe Dev.
Corp. v. U.S. Dep't of Def.*, 262 F.3d 1306, 1313 (Fed. Cir. 2001)
("Rothe I").  The program was subsequently extended through

3

Congressional reauthorization in 1989, 1992, 1999, and 2002. *Id.; Rothe Dev. Corp. v. U.S. Dep't of Def.*, 413 F.3d 1327, 1330 (Fed. Cir. 2005) ("Rothe II").  The program was most recently reauthorized on January 6, 2006.  *Rothe Dev. Corp. v. U.S. Dep't of Def.*, __ F. Supp. 2d __, 2007 WL 2302376, at *4 (W.D. Tex. Aug. 10, 2007) ("Rothe III") (citing Nat'l Def. Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 842, 119 Stat. 3136 (Jan. 6, 2006)).  The program is currently set to expire after the 2009 fiscal year.  *Id.; see* 10 U.S.C. § 2323(k).

As currently codified, the program sets a "goal" that five percent of the total dollar amount obligated for defense contracts and subcontracts for each fiscal year be awarded to small businesses that are owned and controlled by socially and economically disadvantaged individuals as defined by the Small Business Act.  10 U.S.C. § 2323(a)(1).[1]  The statute authorizes several approaches to attain the five percent goal, including technical assistance, the issuance of contracts through the Section 8(a) program, set-asides for small disadvantaged businesses, and price evaluation adjustments.  *Id.* § 2323 (c), (e)(3)(A)-(B); *see Rothe III*, 2007 WL 2302376, at *5.  The Section 8(a) program has in recent years been the primary

---

[1]  The statute defines "socially and economically disadvantaged individuals" by reference to Section 8(d) of the Small Business Act. The regulations implementing Section 8(d) basically follow the definitions of social and economic disadvantage used in Section 8(a). *See Rothe III*, 2007 WL 2302376, at *12-13.

4

preferential contracting program that DoD uses to meet its five

percent goal. *See Rothe III*, 2007 WL 2302376, at *12 (describing

suspension of price evaluation adjustment program since 1999).

## II. Procedural History

This case originally arose from a decision by the Navy to

award a contract for the development of a UH-1N Aircrew

Procedures Trainer ("APT"), a mobile flight simulator for the

UH-1N "Huey" helicopter, exclusively through the Section 8(a)

program.  Plaintiff, a small company that had previously designed

and manufactured flight simulators for the military, would have

competed for this procurement but for the fact that it was not a

participant in the Section 8(a) program.  Plaintiff filed an

administrative protest with the contracting officer contesting

the decision to procure the contract through the Section 8(a)

program.  After plaintiff's administrative claim and subsequent

administrative appeal were denied, plaintiff filed its original

complaint in this Court, claiming that the Navy's decision to

procure the APT through the Section 8(a) program was

unconstitutional and violated the Administrative Procedures Act.

Plaintiff sought declaratory and injunctive relief.

In May 1996, this Court denied plaintiff's motion for a

preliminary injunction.  The Court held that plaintiff lacked

standing to bring its action and had otherwise failed to

establish a sufficient factual and legal basis for the issuance

of a preliminary injunction.  *See DynaLantic Corp. v. Dep't of Def.*, 937 F. Supp. 1 (D.D.C. 1996).  Subsequently, in August 1996, the Court dismissed the entire case on standing grounds.

Plaintiff appealed from both the denial of its motion for preliminary injunction and the dismissal order.  The D.C. Circuit dismissed the appeal from the denial of the motion for preliminary injunction as moot in light of the dismissal of the entire action, but granted plaintiff's motion to enjoin the APT procurement during the pendency of the appeal from the dismissal order.  *DynaLantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1014 (D.C. Cir. 1997).  A few weeks later, while briefing for that appeal was still underway, the Navy canceled the proposed solicitation for the APT procurement.  *Id.*

In the appeal then, the government argued that the case had become moot because there was no plan to contract for the APT through the Section 8(a) program.  *Id.*  The D.C. Circuit sidestepped the mootness issue by instead allowing plaintiff "to amend its pleadings to raise a general challenge to the 8(a) program as administered by SBA and participated in by the Defense Department."  *Id.* at 1015.  The court thus allowed plaintiff to facially challenge DoD's use of the 8(a) program without challenging "one particular application" of DoD's policy.  *Id.*

The court next considered whether plaintiff has standing to
bring this facial challenge.  In evaluating whether plaintiff has
articulated a cognizable injury for standing purposes, the Court
held that plaintiff's injury was not the inability to participate
in the 8(a) program per se, but rather plaintiff's "lack of
opportunity to compete for Defense Department contracts reserved
to 8(a) firms."  *Id.* at 1016.  Thus, plaintiff is injured by the
DoD's usage of the 8(a) program because it "causes a not
insignificant portion of [plaintiff's] potential business
opportunities to be foreclosed."  *Id.*  The Court then held that
this injury was traceable to the race-conscious provisions of the
8(a) program that aided many firms in obtaining "a preferred
position to [plaintiff] in competing for Defense Department
contracts."  *Id.* at 1017.  For the same reason, plaintiff's
injury could be remedied, at least partially, by a favorable
decision.  *Id.* at 1017-18.  Finally, the Court concluded that
plaintiff's injury was sufficiently imminent to confer standing
because of "the likelihood that the government will, sometime in
the near future, attempt to procure under the 8(a) program
another contract for which [plaintiff] is ready, willing, and
able to bid."  *Id.* at 1018.

Upon remand to this Court, plaintiff filed its second
amended complaint.  Plaintiff claims that the DoD's usage of the
8(a) program violates plaintiff's rights under 42 U.S.C. §§ 1981

7

and 2000d and the equal protection component of the Due Process Clause of the Fifth Amendment.  2d Am. Compl. at 7.  Plaintiff seeks an injunction prohibiting defendants from awarding any contract for military simulators based on the race of the contractors.  *Id.* at 8.  Following discovery, both parties filed motions for summary judgment.  Since then, several amici have submitted briefs upon request of the Court and the parties have notified the Court of recent legal authorities.  No party, however, has informed the Court of any of the circumstances surrounding Congress's reauthorization of the DoD program in 2006.

## ANALYSIS

In this case, plaintiff is challenging DoD's policy of using the Section 8(a) program, as called for in 10 U.S.C. § 2323, and not the 8(a) program as a whole.  While the parties' briefing gives the impression that DoD's policy and the 8(a) program are separate, and each independently at issue here, the structure of the laws and procedural history establish that only DoD's usage of the 8(a) program is the subject of this case.

The D.C. Circuit's opinion makes clear that plaintiff's standing is based on its inability to compete equally for DoD contracts.  *See Dynalantic*, 115 F.3d at 1016-18.  Whether any other agency utilizes the 8(a) program is unrelated to plaintiff's injury that gives it standing.  Therefore,

plaintiff's second amended complaint must be read to only raise claims against the DoD policy in 10 U.S.C. § 2323 and the 8(a) program to the extent employed by section 2323.

Moreover, the nature of the 8(a) program dictates the same result. When a firm qualifies for the 8(a) program, it is not entitled to receiving government contracts automatically. *See* 13 C.F.R. § 124.501(c). A firm is entitled to other financial or technical assistance, *see, e.g.*, 15 § 636(j)(10)-(16), but plaintiff is not challenging the denial of those benefits. Instead, plaintiff attacks the granting of 8(a) contracts, which only occurs as a result of another agency choosing to employ the 8(a) program. *See* 15 U.S.C. § 644(g). Thus, the 8(a) program, apart from DoD's usage of it, cannot affect plaintiff's interests. Finally, plaintiff has not challenged any of DoD's other methods of meeting its five percent goal apart from the 8(a) program. *See Rothe III*, 2007 WL 2302376, at *5. Therefore, the sole subject of this case is DoD's utilization of the 8(a) program as required by 10 U.S.C. § 2323.

As the parties agree, the Section 8(a) program utilizes race-conscious criteria in qualifying applicant firms, and therefore DoD's policy, which employs the program to issue contracts, must be reviewed using strict scrutiny. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995); *Western States Paving Co., Inc. v. Washington State Dept. of Transp.*, 407

F.3d 983, 990 (9th Cir. 2005).  Such racial classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests.  *Adarand*, 515 U.S. at 227; *Western States Paving*, 407 F.3d at 990.  The compelling government interests identified by defendants are the needs to ensure that its funding does not perpetuate the effects of racial discrimination and to remedy the effects of past discrimination. *See Western States Paving*, 407 F.3d at 991 (citing *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989)); *Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1165 (10th Cir. 2000) ("Adarand II").

In order for the government to rely upon such interests, the Court must "evaluate the evidence that Congress considered . . . to ensure that it had a 'strong basis in evidence for its conclusion that remedial action was necessary.'"  *Western States Paving*, 407 F.3d at 990  (quoting *Croson*, 488 U.S. at 500).  This evaluation specifically includes reviewing the evidence before Congress prior to the enactment of the racial classification. *Rothe II*, 413 F.3d at 1338.  Courts have thus examined the evidence that Congress considered at the time a racially remedial program is enacted.  *See Western States Paving*, 407 F.3d at 991-93 (examining evidence Congress considered when enacting the statute in question); *Sherbrooke Turf, Inc. v. Minnesota Dept. of Trans.*, 345 F.3d 964, 969-70 (8th Cir. 2003) (same); *Adarand II*,

10

228 F.3d at 1166-75; *O'Donnell Constr. Co. v. Dist. of Columbia*, 963 F.2d 420, 424-27 (D.C. Cir. 1992).   Therefore, because the DoD program was reauthorized in 2006, the Court must consider the evidence before Congress at the time of the reauthorization.   *See Rothe II*, 413 F.3d at 1338 (holding that district court must consider evidence before Congress at the time of the most recent authorization); *O'Donnell Constr.*, 963 F.2d at 427-28 (considering evidence before legislature when it enacted and then amended the statute in question).

The most recent decision in the *Rothe* case demonstrates that Congress considered significant evidentiary materials when it reauthorized the DoD program in 2006.   *See Rothe III*, 2007 WL 2302376, at *49-51.   The court in *Rothe III* reviewed the legislative history and specifically found that six recently published disparity studies were "put before Congress prior to the date of the present reauthorization in relation to [the DoD program] and to ground its enactment."   *Id.*; *see also id.* at *76-86 (describing other evidence before Congress in 2006).   The court then examined these disparity studies in detail.   *Id.* at *52-76.   After reviewing all of this evidence, the court concluded that Congress had a compelling interest in reauthorizing the DoD program in 2006, which was supported by a strong basis in the evidence.   *Id.* at *86.

11

This Court cannot resolve the fundamental issues raised by the parties' motions without considering the evidence before Congress in 2006.  The *Rothe III* decision makes clear that most of this evidence is not currently before the Court.  Therefore, both motions for summary judgment will be denied without prejudice to reconsideration upon a complete record.

The parties shall propose future proceedings in this case in order to supplement the record.  A limited period of additional discovery may be necessary to gather and examine the relevant evidence.  *See id.* at *32 (describing discovery allowed for the purpose of determining what information was before Congress in 2006 and whether there have been recent, relevant changes to the DoD program).  Upon consideration of the parties' proposal, the Court will schedule the necessary proceedings.

## CONCLUSION

For the foregoing reasons, both motions for summary judgment are **DENIED without prejudice**, and the parties are directed to propose future proceedings that will fully supplement the record. An appropriate Order, which includes further instructions, accompanies this Memorandum Opinion.


**Signed:     Emmet G. Sullivan**
             **United States District Judge**
             **August 23, 2007**